## ALEXANDER PORTER *vs.* JOSEPH SAWYER.

A bet on the nomination election of candidates for the coroner's office is illegal and void.

A *check* deposited in the hands of a stakeholder cannot be recovered in an action for *money had and received;* he is liable for the deposit only as received.

CASE. The narr was in assumpsit for money had and received; money lent, &c. and on an account stated.

The deft. pleaded *"non assumpsit* except as to the sum of fifty dollars parcel of the several moneys in the declaration mentioned; and a *tender* as to said sum of fifty dollars, parcel, &c. and brings the same here into court, &c."  Replications and issues.

The action was against a stakeholder of a wager on the event of a nomination election held by the Jackson party of Newcastle county, for the selection of a candidate for the office of coroner of that county. The bet was between Alexander Porter the plff. and a certain Joseph Williams of fifty dollars on each side, and was in these words, "that if Michael Downey should receive more votes in the city of Wilmington and hundred of Christiana for the nomination as coroner than Joseph Williams would receive in the whole county, then Porter was to win; otherwise Williams to win." The stakes were deposited in the hands of defendant, to wit: fifty dollars in cash by Porter, and a check on the Farmers' Bank for fifty dollars by Williams. Porter won the bet and demanded the money of the stakeholder who refused to pay it, having been notified by Williams not to pay it over, but he tendered to Porter fifty dollars. Deft. presented the check of Williams at Bank in order to have it cashed, but payment had been stopped and it was refused.

*Booth,* for deft. The wager is illegal and no action can be supported upon it. The English courts have lately set their faces against suits on trifling wagers and have regretted that the door was ever opened to this kind of litigation. This was a bet of that character. It is, again, the policy of the courts to discountenance betting of every description on account of its immoral tendency. But according to the principles of the common law no wager which was against public policy or against morality could be sustained. The subject matter of this bet is within this prohibition; it is contrary to public policy; tends to sap the foundation of our public institutions, to impair the purity and freedom of elections. It does not vary the case that this bet was merely on a nomination election and not upon the final vote for the officer, its *tendency* is the same; it has its influence on the election and that influence is a corrupting one. If you taint the fountain the stream must be impure. Every bet on the result of a nomination is to that extent a bribe of votes and influence; and, considering the effect of party discipline in our country, the votes and influence thus acquired have a certain effect on the final election. And in this way men totally unqualified may be bribed into office through the medium of bets. The payment into court is an admission of the plff.'s right of action to that extent, but to no more; and as to the balance of this deposit; even if the court and jury should sustain the principle of such wagers, we contend that the plff. cannot

recover it in an action for money had and received to his use. It was not money but a check for the payment of money, the mere evidence of a debt and on which no money was ever received. The deft. who is but a stakeholder is not bound to answer for this deposit in money but in specie, and if liable at all it is not in this form of action.

*Bayard.* I hold that if a man makes a lawful bet and loses it he is bound to pay it, and can be compelled by an action at law. It is as much the subject of a suit as any other debt, and it will not do on any general notions of discountenancing wagers to say that a man shall not recover a debt which another lawfully owes him, because it had its origin in a risk which the parties mutually agreed to take on a certain event. Many, if not most, of the contracts which are the subjects of suits in our courts are either directly or remotely founded in this kind of risk or hazard. Cases of insurance are cited as examples; and all transactions in stocks are clearly of this character. The common law supports such wagers as are not against public policy, or morality; which do not tend to private injury or exposure of other persons, with a few other exceptions. As we have no act of assembly altering this I am authorized to assume that it is also the law of this state. If the court are of opinion that the law will not permit such a bet as this to be recovered, I have nothing to say; but until such is declared to be the law, I shall consider this bet like any other contract, as imposing a legal liability. It is possible that public policy might make it necessary to restrain the betting on elections; elections known to the law, authorized by the law and protected by the law: but this nomination election is a mere party arrangement for bringing out the candidates, is not known to the law and cannot be noticed by it. Bribery of voters at an election authorized by law is a crime denounced by the law; and as betting on such elections may be a means to disguise bribery public policy may on this account restrain the betting; but no betting on the result of a nomination election could convey a bribe. It does not therefore fall within the mischief of the other class of wagers. As to the other defence, Sawyer received the check as money; did not object to it as such; it was convertible into money at any time, and would have been cashed had he not failed to present it at the Bank before the result of the bet was known. He is now precluded from setting up this objection as it arises from his own negligence. At all events it was his duty to have handed over the check to the plff. on his demanding the money.

The *Chief Justice* charged the jury.—That, as a general proposition, it was lawful to bet. Contracts of this kind may be entered into and the obligations arising from such contracts must be enforced by courts and juries if they be not such as to effect the good of society, corrupt public morals or infringe upon the private rights or feelings of third persons. Thus a bet on the age of a lady, or on the sex of a person is illegal, according to adjudged cases, because such bets offend the delicacy and injure the feelings of third persons. And a bet on the issue of a general election, whilst pending, would undoubtedly be illegal, as being against public policy, and hurtful to society. In this country especially the purity of elections is a matter of the

first consequence to the due administration of the government, and any thing which tends to corrupt these ought not to be allowed. Has such a bet as this that tendency? The nomination election referred to is understood to be a regular poll, opened and conducted as far as practicable in the same manner with other elections, by the members of one of the great political parties, to determine who among the applicants for office shall be fixed on as the candidates of the party. Its object is to concentrate the votes of the party on the most popular candidate, and the obligations of party are universally understood to require the support at the general election of the successful candidate at the nomination election. We cannot shut our eyes to the condition of our own affairs, nor to the fact that the person brought out at the nomination election by the party in the majority is almost sure to be the elected officer: that in truth as to the filling of offices with good men a nomination election held by the party in the majority is of quite as much consequence to the public as a general election. Is it not then equally important to preserve the purity of these elections? If they are corrupted by bribery or an undue influence raised through the medium of betting, have not such bets a *tendency* to impair the purity of elections? If they have, they ought not to be countenanced.

The entertaining of suits for such bets is also objectionable from their tendency to embarrass, if not corrupt, the administration of justice by introducing into the jury box the excited feelings of political controversy than which nothing is more unfavorable to the calm and impartial administration of justice. (The chief justice referred to the case of *York* vs. *Cubbage* in the late court of common pleas, in which for a pitiful bet of a few dollars, the time of the court was occupied through two closely contested trials, and the halls of justice disgraced by the disclosure of an angry political quarrel in the jury room.)

On another ground, also, this bet seems to us to be objectionable, that of improperly interfering with the private rights and the feelings of third persons. Upon what principle had the parties here the right to bet on the personal popularity of Michael Downey or of Joseph Williams? These individuals had the right to stand before the public and to have their claims to office tested without such an interference by third persons as must necessarily have some effect on the result. Our opinion therefore is, that this bet is illegal.

On the other question we are equally of opinion that the plff. is not entitled to recover. These parties deposited in the hands of Sawyer, a mutual friend, the one fifty dollars in money, the other a check on the bank for fifty dollars. This check has never been converted into money and the stakeholder was not bound to convert it; indeed it is proved that he could not convert it, for when it was presented for that purpose payment was refused. What then was he bound to pay on the decision of the bet? Certainly, what he received. And if the plff. was entitled to sue Sawyer for his deposit, the check, as such, could not be recovered in this form of action for money had and received to plff.'s use, but in an action of trover for the property.                    Verdict for defendant.

*J. A. Bayard*, for plaintiff.
*Booth*, for defendant.